**UNITED STATES of America**

v.

**John DOE.**
**No. 11188.**

United States District Court,
S. D. New York.
Nov. 12, 1970.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for United States; Robert G. Morvillo, Asst. U. S. Atty., of counsel.

Segal & Hundley, New York City, for witness.

## OPINION

COOPER, District Judge.

Called to testify before a regularly impanelled grand jury in this District on November 6, 1970, the witness has refused to furnish requested exemplars of his own signature and the names of six others. We are asked to support his refusal. The Government frankly states that the witness faces possible indictment at the hands of this grand jury presently inquiring into securities fraud.

The witness urges upon us in the main several grounds which he regards supportive of his refusal to comply with the request of the Assistant United States Attorney appearing before, and the direction of the foreman of, the grand jury. They include the protection guaranteed him against self-incrimination by the Fifth Amendment; that he will not be represented by counsel before the grand jury; that the exemplars demanded of him are before the very same grand jury which would have the responsibility of deciding whether or not to indict him; that the grand jury will be afforded an opportunity to see and consider the manner in which he furnishes the requested exemplars—"inherent in his Fifth Amendment rights is his option not to subject his demeanor or personality to the scrutiny of a grand jury" (p. 4 memorandum of law submitted by his attorneys); that the directive goes beyond the conceded right of the grand jury to compel him to be the source of "real or physical evidence"; and that the situation presented by the directive is one where the witness "is actually being asked to incriminate himself whether or not he is the person who did in fact sign" the documents already before the grand jury (p. 8 law memorandum of his attorneys).

\* \* \*

The arguments as to whether the witness may constitutionally be required to give handwriting exemplars in the presence of the grand jury focus on the case of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) where the Supreme Court held that the taking of handwriting exemplars did not violate the petitioner's Fifth Amendment privilege against self-incrimination. In speaking for the Court, Mr. Justice Brennan stated:

> "The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications—for example, compliance with a subpoena to produce one's papers,'—and not 'compulsion which makes a suspect or accused the source of "real or physical evidence" * * *.' One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. * * * No claim is made that the content of the exemplars was testimonial or communicative matter."

We should note several things from the outset. First, Gilbert sets forth two categories with separate treatments. The Fifth Amendment protects against compulsion of an accused's "testimonial communication" but not that "which makes a suspect or accused the source of real or physical evidence."

Secondly, the Supreme Court has considered the voice or body by themselves to be identifying physical characteristics, has analogized exemplars by themselves to the voice or body, and has expressly and explicitly held each to be outside the protections afforded by the Fifth Amendment.

The Government contends that Gilbert applies here and that its framework requires that the exemplar as well as its taking be regarded as non-privileged physical evidence.

At oral argument of the instant application, the witness argued that the Gilbert rule is weak and as a matter of law need not be followed; that due to the closeness of the decision and a suggested analogy between exemplars and line-ups where (as to the latter) Mr. Justice Clark agreed there should be a right to counsel (United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)), and, still further, since there is no right to counsel before the grand jury, the exemplars cannot be taken in its presence.

■ While this is a resourceful argument, it suffers from several impediments. Arguments addressed to District Courts based on judicial arithmetic in matter of constitutional dimension are usually difficult to accept. The spectre of a developing calculus of weight to be given constitutional law based on the alignment of judges is a harrowing prospect indeed.[1] More pointedly, Gilbert holds that the taking of exemplars is not a critical stage of the criminal proceeding entitling the petitioner to the right of counsel. The Court reasoned that the exemplars were taken before

---

1. It clearly is the law of the land that even a 4–4 opinion * * * affirms the lower court and the affirming opinion is the Court's opinion. Despite counsel's argument, we have not reached the point where a majority plus a concurring opinion is equivalent to a reversal. If we allow Mr. Justice Clark to have the final say, as counsel would have us do, we need go no farther than his concurring opinion in Wade: "I dissented in Miranda but I am bound by it now, as we all are." Wade at 243, 87 S.Ct. at 1941. If Mr. Justice Clark himself cannot complain even though he registered dissent in Miranda, surely the witness before us cannot complain especially since Mr. Justice Clark joined with the majority in the Gilbert case.

indictment, that absence of counsel afforded minimal risk of derogation of the right to a fair trial, and that unrepresentative exemplars could be corrected at trial by providing additional ones for examination by witnesses or experts through the adversary process. The court therefore rejected the analogy now urged upon us.

■ The constitutional test cannot be that a personal act which prejudices a witness or defendant is self-incriminatory. To raise such a contention to a doctrine of constitutional law would mean that any act which a witness or defendant did under compulsion thereby revealing his culpability should be excluded. This would include fingerprints, alcohol level in the blood, etc., etc. These constitute "physical evidence" allowable under *Gilbert*. The rule does not depend on whether an item of evidence so developed proves to be of slight or great detriment to that person's position.

■ Although the witness suggests otherwise, we feel that *Gilbert* has been sufficiently delineated under United States v. Doe, 405 F.2d 436 (2d Cir. 1968) and United States v. Izzi, 427 F.2d 293 (2d Cir. 1970), to enable us to reach a decision. And we do not see a grand jury proceeding curtailing in the least the power to observe a witness' demeanor, especially in light of the *Gilbert* holding that the body itself is "physical evidence" and not protected by the Fifth Amendment prohibition against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) is consistent with this view of "physical evidence."

\* \* \*

A sense of fair play which has come to be expected of grand juries as they go about the discharge of their vital mission, will cause the instant grand jury to take into account, and make allowance for, any tension which the witness may experience and possibly display as he furnishes the exemplars. This extremely simple performance hardly subjects the witness to any of the "emotional tensions," and the impact on the grand jury of its possible betraying consequences, dealt with in *Wade*, supra.

To eliminate any unwarranted impressions which the witness fears may come to the grand jury if he complies with its directive in its presence, and to make watertight our protection of his rights, we propose to tell that body that we have directed the witness to furnish, in his normal handwriting manner and in its presence, the exemplars requested; that they should bear in mind that such a performance, under such rare and solemn circumstances, would subject any witness to a certain amount of tension; that their sole and exclusive concern with the episode of supplying the exemplars is what the witness has written—the physical evidence of the writing itself—and nothing else.

We also propose to tell the grand jury that the witness should simply be asked to write his and certain other names and, if the occasion warrants, to write at varying speeds each name a few times. Specifically, resort should not be had to the art of advocacy when requesting the exemplars, the only purpose being to furnish the grand jury with true exemplars for comparison with the signatures appearing on the documents before it.

And finally we will make it our purpose to tell the grand jury that in their search for the truth, they should not draw unfavorable inference against the witness by reason of his refusal heretofore to comply; that he has raised an important constitutional question with respect to which he has every right to obtain judicial resolution.

■ What we have here written clearly obviates the need before the grand jury of counsel for the witness when the directive is put to him by the grand jury's foreman. In oral argument it was proposed "that counsel be allowed to appear with the witness in the event the Court orders the furnishing of the requested exemplars." (p. 2 of law memorandum by attorneys for the witness). If this item of inquiry is properly han-

dled, it will be at its irreducible minimum and certainly for that extremely simple purpose counsel's presence would border on the ludicrous.

We therefore conclude that the position of the Government is correct. The witness is ordered to appear before the grand jury when it so directs and furnish in its presence the exemplars requested.

So ordered.

